No. 24-1939

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

United States of America,

*Plaintiff-Appellee*,

v.

Jose de Jesus Garcia Rodriguez,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Northern District of California
District Court Nos. 4:19-cr-00614-PJH-1; 4:22-cv-06506-PJH

**APPELLANT'S OPENING BRIEF**

Gary K. Dubcoff (SBN 168089)
584 Castro Street, #439
San Francisco, CA 94114
Telephone: (415) 497-9750
Email: garydubcoff@gmail.com

Counsel for Appellant
JOSE DE JESUS GARCIA RODRIGUEZ

1

**TABLE OF CONTENTS**

Page

Table of Contents ....................................................................... 2

Table of Authorities .................................................................. 5

Statement of Jurisdiction ......................................................... 10

    A.    Statutory Basis for Subject-Matter Jurisdiction of District Court . 10

    B.    Statutory Basis for Court of Appeals' Jurisdiction ...................... 10

    C.    Timeliness ...................................................................... 10

    D.    Appealability .................................................................. 10

Statement of Bail Status .......................................................... 10

Statement of Issue Presented for Review ................................. 11

Introduction .............................................................................. 11

Statement of the Case .............................................................. 13

    A.    Nature of the Case and Course of Proceedings ........................ 13

    B.    Statement of Facts ............................................................ 16

        1.    The Allegations of the *Pro Se* § 2255 Motion .................... 16

        2.    The Government's Opposition and Submitted Evidence ... 17

        3.    Defendant's *Pro Se* Reply ................................................ 18

        4.    Subsequent Pre-Denial Filings ........................................... 21

        5.    The District Court's Denial of the § 2255 Motion .............. 22

Summary of Argument ............................................................ 23

**TABLE OF CONTENTS (cont'd)**

**Page**

Argument ........................................................................................... 25

I. THE DISTRICT COURT ERRED IN DENYING CLAIM NO. TWO IN DEFENDANT'S § 2255 MOTION ...................................................... 25

    A. Standard of Review and Reviewability ......................................... 25

    B. Legal Background ........................................................................ 25

    C. The Allegation of *Strickland* Deficient Performance Was Not Conclusively Refuted .................................................................... 26

        1. The "Self-Serving" Nature of the Allegation Is Not a Valid Basis for Summarily Rejecting It ............................. 26

        2. The Allegation's Being Raised for the First Time in a § 2255 Motion Is Not a Valid Basis for Summarily Rejecting It .......................................................................... 27

        3. The Allegation Was Not Contradicted by the Plea Agreement, Even if That Were Relevant to Deficient-Performance Analysis, Which It Is Not ........................... 29

        4. The Allegation Was Not Contradicted by the Defendant's Statements at the Change-of-Plea Hearing .... 32

        5. The Allegation Was Not Contradicted by Plea-Stage Counsel's Declarations, Which Could Not Warrant Summary Rejection Even if It Was ................................... 39

    D. The Allegation of *Strickland* Prejudice Was Not Conclusively Refuted ......................................................................................... 41

# TABLE OF CONTENTS (cont'd)

**Page**

II.     THE DISTRICT COURT ERRED IN DENYING DEFENDANT
        AN EVIDENTIARY HEARING BEFORE DENYING HIS § 2255
        MOTION ................................................................................  45

        A.     Standard of Review ....................................................  46

        B.     Legal Background ........................................................  46

        C.     The District Court Abused Its Discretion in Denying an
               Evidentiary Hearing on Claim No. Two of the § 2255 Motion ...  49

               1.     The Immigration-Advice IAC Claim Is Not "Conclusory"  49

               2.     The District Court's Own Unspecified Recollection
                      Adds Nothing ....................................................  53

        D.     Were He Afforded an Evidentiary Hearing, It Is Highly Likely
               That Defendant Will Prove the Predicate Allegations of Claim
               No. Two ......................................................................  54

Conclusion .........................................................................................  58

Certificate of Compliance for Briefs ................................................  60

## TABLE OF AUTHORITIES

**Cases**                                                         **Page**

*Armienti v. United States*, 234 F.3d 820 (2d Cir. 2000) .................................. 54

*Baumann v. United States*, 692 F.2d 565 (9th Cir. 1982) ........................... 46, 52

*Blackledge v. Allison*, 431 U.S. 63 (1977) .................................................. 35, 48

*Brownlee v. Conine*, 957 F.2d 353 (7th Cir. 1992) ......................................... 51

*Chaidez v. United States*, 568 U.S. 342 (2013) ............................................... 38

*Crispo v. United States*, 443 F.2d 13 (9th Cir. 1971) (*per curiam*) .................. 48

*Delgadillo v. Carmichael*, 332 U.S. 388 (1947) .............................................. 44

*Diaz v. State*, 896 N.W.2d 723 (Iowa 2017) ................................................... 37

*Doe v. United States*, 915 F.3d 905 (2d Cir. 2019) .................................... 34, 43

*Flores-Vega v. Barr*, 932 F.3d 878 (9th Cir. 2019) .......................................... 44

*Fontaine v. United States*, 411 U.S. 213 (1973) .............................................. 35

*Hart v. Massanari*, 266 F.3d 1155 (9th Cir. 2001) .......................................... 58

*Hill v. Lockhart*, 474 U.S. 52 (1985) ............................................................... 41

*INS v. St. Cyr*, 533 U.S. 289 (2001) ................................................................ 42

*Kafo v. United States*, 467 F.3d 1063 (7th Cir. 2006) ..................................... 51

*Lee v. United States*, 582 U.S. 357 (2017) ................................................. 38, 41

*Machibroda v. United States*, 368 U.S. 487 (1962) ............................. 48, 53, 54

*Massaro v. United States*, 538 U.S. 500 (2003) .............................................. 27

5

## TABLE OF AUTHORITIES (cont'd)

**Cases**                                                                                    **Page**

*Ortega-Araiza v. State*, 331 P.3d 1189 (Wyo. 2014) ........................................  34

*Padilla v. Kentucky*, 559 U.S. 356 (2010) ..................................................  19, 42

*Roberts v. United States*, 486 F.2d 980 (5th Cir. 1973) ...................................  53

*Rose v. Superior Court*, 81 Cal. App. 4th 564 (2000) ......................................  26

*Shah v. United States*, 878 F.2d 1156 (9th Cir. 1989) ....................................  52

*State v. Nunez-Diaz*, 444 P.3d 250 (Ariz. 2019) ...........................................  41

*State v. Paredez*, 101 P.3d 799 (N. Mex. 2004) ...........................................  36

*State v. Sandoval*, 249 P.3d 1015 (Wash. 2011) ...........................................  43

*Turner v. United States*, 183 F.3d 474 (6th Cir. 1999) ...................................  47

*United States v. Akinsade*, 686 F.3d 248 (4th Cir. 2012) ................................  35

*United States v. Arrington*, 4 F.4th 162 (D.C. Cir. 2021) ................................  30

*United States v. Bonilla*, 637 F.3d 980 (9th Cir. 2011) ..........................  21, 34

*United States. v. Chacon-Palomares*, 208 F.3d 1157 (9th Cir. 2000) ...............  48

*United States v. Goodheim*, 664 F.2d 754 (9th Cir. 1981) (*per curiam*) ...........  30

*United States v. Hanoum*, 33 F.3d 1128 (9th Cir. 1994) ................................  27

*United States v. Howard*, 381 F.3d 873 (9th Cir. 2004) .............................  46, 47

*United States v. Kastenbaum*, 613 F.2d 86 (5th Cir. 1980) ............................  54

*United States v. Murillo*, 927 F. 3d 808 (4th Cir. 2019) ................................  32

## TABLE OF AUTHORITIES (cont'd)

**Cases**        **Page**

*United States v. Ramiro*, 548 Fed. Appx. 458 (9th Cir. 2013) ......................... 37

*United States v. Reyes-Bosque*, 624 Fed. App'x 529 (9th Cir. 2015) ............... 27

*United States v. Rodrigues*, 347 F.3d 818 (9th Cir. 2003) ............................... 47

*United States v. Rodriguez*, 49 F.4th 1205 (9th Cir. 2022) ........................ 26, 46

*United States v. Rodriguez-Vega*, 797 F.3d 781 (9th Cir. 2015) ............... *passim*

*United States v. Seng Chen Yong*, 926 F.3d 582 (9th Cir. 2019) ...................... 25

*United States v. Swaby*, 855 F.3d 233 (4th Cir. 2017) ............................... 31, 45

*United States v. Swisher*, 811 F.3d 299 (9th Cir. 2016) (*en banc*) .................... 25

*United States v. Urias-Marrufo*, 744 F.3d 361 (5th Cir. 2014) ........................ 34

*United States v. Verduzco–Rangel*, 884 F.3d 918 (9th Cir. 2018) .................... 37

*United States v. Withers*, 638 F.3d 1055 (9th Cir. 2011) ................................ 47

**Statutes**

8 U.S.C. § 1101(a)(43)(B) ................................................................... 37

8 U.S.C. § 1182(a)(2)(C)(ii) ............................................................... 44

8 U.S.C. § 1227(a)(2)(A)(iii) .............................................................. 38

8 U.S.C. § 1227(a)(2)(B)(i) ................................................................ 21

8 U.S.C. § 1228(a)(3)(A) ................................................................... 28

8 U.S.C. § 1229b(a)(3) & (b)(1)(C) ....................................................... 44

# TABLE OF AUTHORITIES (cont'd)

| **Statutes** | **Page** |
|---|---|
| 8 U.S.C. § 1229c(a)(l) & (b)(1)(C) | 44 |
| 18 U.S.C. § 545 | 56, 57 |
| 18 U.S.C. § 1001 | 57 |
| 18 U.S.C. § 3231 | 10 |
| 18 U.S.C. § 3582(c)(2) | 14 |
| 21 U.S.C. § 841(a)(1) | 13, 38, 56 |
| 21 U.S.C. § 841(b)(1)(C) | 13 |
| 21 U.S.C. §§ 952 & 960 | 57 |
| 28 U.S.C. § 1291 | 10 |
| 28 U.S.C. § 1331 | 10 |
| 28 U.S.C. § 2253(a) | 10 |
| 28 U.S.C. § 2254 | 30 |
| 28 U.S.C. § 2254(d) | 30 |
| 28 U.S.C. § 2254(d)(1) | 30 |
| 28 U.S.C. § 2255 | 10, 14, 27, 30 |
| 28 U.S.C. § 2255(b) | 27, 47 |
| 28 U.S.C. § 2255(d) | 10 |
| 28 U.S.C. § 2255(f)(3) | 30 |

## TABLE OF AUTHORITIES (cont'd)

**Other Authorities** **Page**

Black's Law Dictionary 329 (9th ed. 2009) ...................................... 50

Brief for the United States in *United States v. Mendoza-Plascencia*,
    No. 03-30308 (9th Cir.), 2003 WL 22994963 ...................................... 38

3 Charles Alan Wright & Arthur Miller, *Fed. Prac. & Proc. Crim.* § 635
    (5th ed. 2025 update) ...................................... 54

Circuit Rule 28-2.4(a) ...................................... 11

8 C.F.R. § 1208.16(d)(2) ......................................

Fed. R. App. P. 4(a) ...................................... 10

Fed. R. App. P. 4(a)(1)(B) ...................................... 10

Fed. R. Crim. P. 11 ...................................... 35, 36

merriam-webster.com ...................................... 40, 50

Rules Governing § 2255 Proceedings in the U.S. District Courts, Rule 4(b) ... 47

Rules Governing § 2255 Proceedings in the U.S. District Courts, Rule 8
    Advisory Committee Notes (1976) ...................................... 48

Rules Governing § 2255 Proceedings in the U.S. District Courts, Rule 11(b) .. 10

thelawdictionary.org ...................................... 50

Transcript, U.S. Sentencing Comm'n Public Hearing, at 157 (Feb. 6, 2011) .. 28

## STATEMENT OF JURISDICTION

**A.     Statutory Basis of Subject-Matter Jurisdiction of the District Court**

The district court had jurisdiction over the criminal offenses charged against defendant-appellant Jose de Jesus Garcia Rodriguez (hereinafter "defendant" or "Garcia Rodriguez") pursuant to 18 U.S.C. § 3231; it had jurisdiction over his § 2255 motion to vacate pursuant to 28 U.S.C. §§ 1331 and 2255.

**B.     Statutory Basis for Court of Appeals' Jurisdiction**

This Court has jurisdiction under 28 U.S.C. §§ 1291, 2253(a), and 2255(d).

**C.      Timeliness**

On March 6, 2024, the district court issued an order denying defendant's § 2255 motion to vacate.  ER-3.  On March 29, 2024, defendant filed his notice of appeal.  ER-150.  This appeal is timely pursuant to Fed. R. App. P. 4(a)(1)(B); *see also* Rule 11(b) of the Rules Governing Section 2255 Proceedings in the United States District Courts (providing that Fed. R. App. P. 4(a) "governs the time to appeal an order entered under these rules").

**D.     Appealability**

The district court's judgment is a final judgment appealable pursuant to 28 U.S.C. § 1291.

## STATEMENT OF BAIL STATUS

Although this is not a criminal appeal, it does stem from a challenge to the constitutionality of defendant's conviction and, consequently, he reports,

pursuant to Circuit Rule 28-2.4(a), that he is not currently in custody. As the government reported in its response to his motion for extension of time to file his opening brief, he was released from the custody of the Bureau of Prisons on May 7, 2024, and was deported to Mexico on July 12, 2024. Dkt. entry 14.1 at 4.[1]

## STATEMENT OF ISSUE PRESENTED FOR REVIEW

This Court granted a certificate of appealability, dkt. entry 6, certifying the following issue:

Whether trial counsel's advice regarding appellant's sentencing exposure and the immigration consequences of conviction resulted in a plea that was not knowing and voluntary, including whether appellant was entitled to an evidentiary hearing on this claim.

## INTRODUCTION

It is clear as day what the district court did herein, which was precisely what it could not do. Presented with conflicting averments between Garcia Rodriguez and his plea-stage counsel, it credited the latter over the former without conducting an evidentiary hearing. The order denying the § 2255 motion cited heavily from

---

[1] The government noted in so reporting that both those events occurred before this Court granted its certificate of appealability, dkt. entry 14.1 at 4, as if that timing is a matter of consequence herein. It is not. It neither divests this Court of jurisdiction nor renders the case moot. Should the government make an issue of this timing in its answering brief, defendant will address it in his reply brief.

counsel's declarations submitted by the government, and then added what are obviously makeweight rationalizations, which could not properly serve as justifications, either singly or in combination, for the summary denial.

Some of these rationalizations are inadequate on their face – labeling Garcia Rodriguez' allegations "conclusory," though they were quite factually specific; labeling them as "unsupported," though they were supported both by the direct evidence of his averments and the circumstantial evidence of what his counsel omitted from his declarations, as well as the arguments counsel made in anticipation of and at the sentencing hearing; labeling them as "self-serving," though that is no basis to summarily reject them since *every* § 2255 allegation is self-serving; and blaming him for raising his ineffective assistance of counsel (hereinafter "IAC") claims "for the first time" in his § 2255 motion, though he had no opportunity to raise them earlier and that procedural vehicle was the appropriate mechanism for raising them.

The other rationalizations were either irreconcilable with the record, with extant law, or with both. The summary-denial order found (unspecified) "contradiction" between Garcia Rodriguez' allegations and the written plea agreement, though there were none; it found "contradiction" between his allegations and the plea colloquy, though, again, there were none; and it found the court's advising him at the plea colloquy that his plea could lead to his deportation

12

was a functionally adequate substitute for the advice he *should* have received from his lawyer, namely, that his deportation was a virtual certainty, which, it is clear, his counsel never told him because, among other things, counsel provided *two* declarations in aid of governmental submissions and nowhere averred that was what he had advised his client. Regardless of the absence of contradictions between the record and Garcia Rodriguez' Claim No. Two predicate allegations, even assuming the existence of non-existent contradictions, this Court has explicitly held that the specific portions of the record relied on by the district court in which it purported to discern those contradictions – the written plea agreement and the plea-colloquy's noncitizen admonition – are *irrelevant* to the IAC claim.

Although defendant raised two claims in his § 2255 motion of IAC at the plea stage – he was misled by his lawyer as to his sentencing exposure and the immigration consequences of his guilty plea – he will focus herein on the latter as it is the claim that most clearly warrants the reversal of that claim's denial.

## STATEMENT OF THE CASE

### A. Nature of the Case and Course of Proceedings

On November 14, 2019, an indictment was filed in the U.S. District Court for the Northern District of California, Oakland Division, charging Garcia Rodriguez and another with one count of distribution of methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C); and charging Garcia Rodriguez

13

alone with two further counts of such distribution. ER-144. On February 25, 2020, he entered a plea of not guilty, ECF-9, following which he entered a written plea agreement with the government, which was filed on July 15, 2021, ER-134. On that date, per that agreement, he pled guilty to a single count of distribution. ECF-79 (minutes); ER-131 (reporter's transcript). On December 2, 2021, the district court sentenced defendant to a term of incarceration of 87 months, to be followed by a 3-year term of supervised release. ECF-93 (minutes); ER-107 (reporter's transcript). The judgment was filed the following day, ER-84, and, on December 13, 2021, defendant timely filed a notice of appeal, ECF-102.

On November 21, 2022, this Court issued a memorandum disposition, in case no. 21-10366, dismissing Garcia Rodriguez' appeal on the ground that he had waived his right to appeal. On January 22, 2024, the district court filed an order pursuant to 18 U.S.C. § 3582(c)(2), reducing his term of incarceration from 87 to 70 months, ECF-136, after the parties had stipulated to such reduction, ECF-133, based on the Probation Department's sentence-reduction probation report, ECF-134, which noted, *inter alia*, the absence of any criminal history and his positive post-sentencing conduct, *id.* at 3.

Meanwhile, on October 24, 2022, Garcia Rodriguez filed, *in pro. per.*, a motion to vacate under 28 U.S.C. § 2255. ER-72. On November 28, 2022, the district court issued an Order to Show Cause, finding that he had "presented a

14

cognizable claim for relief," which warranted a response from the government. ER-70. On March 1, 2023, the government filed an opposition, supported by defendant's plea-stage counsel's declaration, ER-50-69; on March 31, 2023, Garcia Rodriguez, still representing himself, replied, ER-33. In that reply, he cited two cases that, apparently, were of sufficient concern to the district court that, on November 28, 2023, it issued a new order, which, *inter alia*, directed the government to address them in a supplemental opposition. ER-31-32. That order also denied Garcia Rodriguez' request for appointment of counsel, *id.* at 32, which he had filed eight days earlier, ECF-129.[2]

On January 9, 2024, the government filed its supplemental opposition, ER-20, supported by a second declaration of plea-stage counsel, ER-18. On January 25, 2025, Garcia Rodriguez filed his supplemental reply, ER-15, supported by his own supplemental declaration, ER-13.

On March 6, 2024, the district court, without conducting an evidentiary hearing, denied the motion and denied in full a certificate of appealability. ER-3-12. On March 29, 2024, Garcia Rodriguez timely filed a notice of appeal. ER-

---

[2] In conjunction with his reply, Garcia Rodgriguez also filed an "alternative motion" to amend his § 2255 motion to add a third claim for relief, ECF-126, which the district court granted, ER-31. He subsequently abandoned that claim in his supplemental reply. *See* ER-15 n.1.

150. On January 24, 2025, this Court issued a certificate of appealability. Dkt. entry 6.

## B. Statement of Facts

### 1. The Allegations of the *Pro Se* § 2255 Motion

In his *pro se* § 2255 motion, defendant alleged IAC at the plea stage premised on two grounds. In his initial claim, he alleged that his guilty plea was involuntary as a result of his lawyer's inducing him to plead by informing him that he (the lawyer) had negotiated a sentence in the 24-30-month range. ER-75.

In defendant's second claim, the one addressed herein, he alleged that his guilty plea was involuntary as a result of his lawyer's inducing him to plead by not correctly informing him of the immigration consequences of his plea. ER-76. He alleged the following supporting facts:

> I asked my lawyer if I would be deported as a result of my guilty plea and he said he didn't think so, adding that I qualified for a drug program and other early-release benefits. Because my lawyer didn't think I would be deported by pleading guilty, I didn't think so either. I therefore agreed to plead guilty expecting my early release benefits, including half-way house and supervise[d] release. I have now learned that when I complete my sentence I will in fact be deported instead of being placed on supervised release as I understood both from my lawyer and this Court at my change of plea hearing. Had I then known I would automatically be deported for pleading guilty I would not have plead guilty but would have gone to trial for a chance to avoid this now automatic deportation.

ER-76.

16

## 2.    The Government's Opposition and Submitted Evidence

After the government secured an order granting it postconviction discovery and a limited waiver of the attorney-client privilege, ECF-123, it filed a response to Garcia Rodriguez' § 2255 motion supported by a declaration of his plea counsel, ER-50-69.  This opposition was based on the lawyer's statements that he did not tell his client the things that his client said he did, and the "fact" that the § 2255 allegations were "belied by the plea agreement and hearing transcripts."  ER-58.

As to the plea agreement, the government quoted its language that it contained "all of the promises and agreements between the government and [defendant]," and defendant agreed that he would "not claim otherwise in the future."  ER-58.  As to the change-of-plea hearing, specifically with respect to Claim No. Two, the government quoted the exchange between the court and Garcia Rodriguez in which the court asked him, "[D]o you understand that if you are not a citizen upon your conviction, you can be removed or deported from the United States?" to which he responded "Okay," and that he affirmed he understood that.  ER-59.  The government also quoted the exchange in which the court asked him if he had "been promised anything in return for [his] guilty plea other than what's in the plea agreement," to which he responded, "No.  No."  *Id.*

As to the declaration obtained from defendant's plea-stage counsel and submitted by the government in support of its opposition, the government cited it

17

at length. Counsel denied making the statements attributed to him by defendant. ER-60. Counsel had no fewer than thirteen conversations with defendant between March 8, 2021, and the change-of-plea date, all of which were attended by a Spanish interpreter translating the discussions, during which the plea agreement was discussed. *Id.*

Regarding the claim of what counsel told or did not tell his client about the immigration consequences of the plea, the government highlighted counsel's statement that he was aware from the beginning of his representation that defendant was not a citizen and would likely be deported if convicted. ER-61. Counsel specifically told defendant that a conviction for this type of crime would render him deportable. *Id.* Although counsel may have told defendant that he had heard of some instances in which a person had been rendered deportable due to a federal drug conviction, but, for whatever reason, had not been picked up by ICE, he never told defendant that he would be one of those people. *Id.* Counsel never told defendant that he did not think defendant would be deported if convicted. *Id.*

### 3. Defendant's *Pro Se* Reply

In his reply, defendant contended, *inter alia*, that: (1) although the government submitted the declaration of his plea-stage counsel in which he asserted that he had informed defendant that he "might" receive a sentence within the range of 24-30 months, the government failed to submit a declaration from the

interpreter who translated that conversation to verify that the interpreter actually used the Spanish word for "might" rather that the Spanish word for "would," ER-33-34; (2) counsel did not deny that he had advised defendant that he qualified for a drug program and other early-release benefits, advice that is inconsistent with the mandatory removal to which defendant's guilty plea subjected him, and the fact that counsel did so inform defendant was corroborated by what counsel argued in the sentencing memorandum that he drafted, specifically, "If the Court imposes a 30-month sentence, [Petitioner] will have almost another year of forced sobriety, followed by testing and treatment, as needed during three years of supervised release," ER-34; (3) counsel's failure to make certain requests is consistent with his failure to understand that defendant was subject to mandatory deportation on account of his offense of conviction, which bolsters the claim that he misadvised defendant about the immigration consequences of his plea, ER-34; (3) counsel wrote in his declaration that he "believed" defendant would be deported as a consequence of his guilty plea, but *Padilla v. Kentucky*, 559 U.S. 356 (2010) (*Padilla*), held that plea counsel's advising a client who is clearly subject to mandatory removal on account of a guilty plea provides ineffective assistance in advising his client that he "believes" the plea renders him removable, ER-35-36; (4) although counsel stated in his declaration that he advised defendant that the guilty plea "would absolutely render him deportable," such advice, even if given,

19

would be inadequate for a defendant such as himself whose plea rendered his deportation inevitable since it failed to convey the certainty of his removal; unlike other defendants who are deportable, Garcia Rodriguez had no available defense thereto, such as, for example, the ability to seek cancellation of the removal, to seek asylum, or to request voluntary departure, ER-36; (5) omissions from plea counsel's declaration raise questions about his veracity, including its saying nothing about the mandatory nature of removal for life following a guilty plea to an aggravated offense, ER-37-38; (6) the plea colloquy, far from substantiating the government's position, undermines it, in that the court only elicited defendant's understanding that he *could* be deported, not that he *would* be, ER-38-39; (7) the government did not discuss *United States v. Rodriguez-Vega*, 797 F.3d 781, 786 (9th Cir. 2015) (*Rodriguez-Vega*), which held that, where removal is a virtual certainty, a lawyer, in order to provide effective assistance, must advise of that deportation certainty, not merely provide general deportation-risk advice; and that reliance on change-of-plea admonitions from the court is misplaced because the duty to advise is the lawyer's, ER-39; and (8) defendant would not have entered a guilty plea that exiled him for life from his family had he understood the consequences of his doing so, ER-40.

20

## 4.     Subsequent Pre-Denial Filings

Apparently concerned about defendant's reliance in his reply on *Padilla* and *Rodriguez-Vega*, ER-31, the district court issued an order that, *inter alia*, directed the government to address those authorities in a supplemental response, ER-31-32. The government complied, arguing that: (1) counsel's advising his client that his guilty plea would render him deportable is the only advice that was required by those authorities as that advice tracks the language used in the applicable statute, 8 U.S.C. § 1227(a)(2)(B)(i), ER-22; and (2) there are instances where a defendant is subject to mandatory deportation and, for whatever reason, is not deported, and, thus, plea counsel could not advise that defendant was certain to be deported, and, regardless, it is not plea counsel's duty to give any immigration advice beyond what the applicable statute sets out, ER-22-23.

Defendant's supplemental reply, authorized by the district court, pointed out that: (1) despite the government's submitting a *second* declaration from plea counsel, counsel *still* did not deny that he believed defendant qualified for early-release benefits, including a stint at a halfway house, which belief is inconsistent with his purported advice to defendant that he absolutely was deportable, ER-15; (2) per *United States v. Bonilla*, 637 F.3d 980 (9th Cir. 2011), "A criminal defendant who [because of an aggravated-felony conviction] faces almost certain deportation is entitled to know more than that it is possible that a guilty plea could

lead to removal; he is entitled to know that [deportation] is a virtual certainty," ER-16; (3) counsel not only failed to tell defendant that his deportation was a virtual certainty, but undermined any inference that that was so by informing him that some drug-convicted defendants never get deported, *id.*; and (4) counsel evinced no understanding that the guilty plea was to an "aggravated felony," which was what made deportation a virtual certainty in this case, ER-17. Defendant also denied that counsel ever advised him that his conviction "would absolutely render [him] deportable." ER-13 at ¶ 1.

**5.      The District Court's Denial of the § 2255 Motion**

The district court denied both of Garcia Rodriguez' claims presented in his § 2255 motion and denied in full a certificate of appealability. ER-3-12. As to the denial of his second claim – that plea-stage counsel had provided IAC by not informing him of the immigration consequences of his guilty plea, thereby rendering that plea involuntary – the district court relied on contrary statements from counsel in his declaration, ER-9-10; the portion of the plea colloquy where the court had asked Garcia Rodriguez whether he understood that, if he was not a citizen, he can be removed or deported from the United States upon his conviction, to which he responded that he understood, ER-10; and contrary statements in the plea agreement (which the court did not specify), ER-11. The court also found that, even were counsel's performance deficient, Garcia Rodriguez failed to

22

establish prejudice because "both the written plea agreement and the change of plea hearing alerted defendant to the potential consequences of his guilty plea, including the immigration consequences." *Id.* The court denied an evidentiary hearing because "defendant's allegations are conclusory and not only unsupported, but directly contradicted, by the evidentiary record, including the court's own recollection of defendant's statements at his change of plea hearing." ER-11-12.

## SUMMARY OF ARGUMENT

The district court erred in denying Garcia Rodriguez' § 2255 motion without an evidentiary hearing in multifarious ways: (1) it relied on untested averments in the declarations from the plea-stage counsel whose effective assistance was being challenged to reject Garcia Rodriguez' allegations of the inadequate legal advice he received, although it was not free to determine disputed issues of fact concerning his entitlement to relief absent an evidentiary hearing; (2) it failed to apprehend that, *even crediting* counsel's averments, they were insufficient to conclusively refute Garcia Rodriguez' allegations of IAC in the mis-advice he received regarding the immigration consequences of his guilty plea because counsel at no point averred that he had advised his client that deportation was a virtual certainty as a consequence of that plea; (3) it relied on certain portions of the change-of-plea hearing and the written plea agreement as contradicting the allegation of IAC regarding immigration-consequences mis-advice, but neither of

23

those, as a matter of law, could substitute for the constitutionally inadequate advice given defendant by his lawyer, assuming defendant's allegations true as the court was bound to do; (4) it found defendant's sworn allegations "unsupported," "contradicted," "self-serving," and "conclusory," but they were supported by his averments, they were not contradicted by the record, they were not conclusory, and self-serving is not a reasonable basis to summarily reject them; (5) it appeared to believe that defendant had to prove his allegations *before* an evidentiary hearing, though he was not required to establish that he would necessarily succeed on his claim before such hearing; (6) it relied on its own "recollection" of defendant's statements at the change-of-plea hearing without specifying what they were, in a context where such putative recollection could have added nothing material to what was revealed in the reporter's transcripts; and, most remarkably of all, (7) it simply refused to follow this Court's unequivocal holdings in *Rodriguez-Vega*, including that: (a) in order to provide effective assistance to a noncitizen defendant faced with mandatory deportation upon pleading guilty to an aggravated felony, plea-stage counsel must advise his client that deportation was "virtually certain, or words to that effect" when "the immigration statute or controlling case law expressly identifies the crime of conviction as a ground for removal," which they did herein; (b) plea colloquies cannot serve as a substitute for such constitutionally adequate advice; and, regardless, (c) a court's informing a noncitizen defendant

24

that his guilty plea *could* lead to his deportation cannot remedy plea-stage counsel's failure to advise that it *would.*

Finally, the conducting of an evidentiary hearing upon remand would not be an academic exercise as it not only would provide the opportunity for the district court to appropriately adjudge Garcia Rodriguez' credibility, but would also provide the opportunity for him to support his claim of IAC prejudice by adducing evidence of the government's willingness to permit defendants charged with the same or a substantially similar crime as him to plead guilty to a non-removable offense.

## **ARGUMENT**

## **I.   THE DISTRICT COURT ERRED IN DENYING CLAIM NO. TWO IN DEFENDANT'S § 2255 MOTION**

### **A.   Standard of Review and Reviewability**

This Court reviews *de novo* the denial of a motion under 28 U.S.C. § 2255. *United States v. Swisher*, 811 F.3d 299, 306 (9th Cir. 2016) (*en banc*).  Findings underlying such denial are reviewed for clear error.  *United States v. Seng Chen Yong*, 926 F.3d 582, 589 (9th Cir. 2019).

### **B.   Legal Background**

To prevail on a claim such as defendant's, that is, IAC in the lead-up to his guilty plea, he must establish that: (1) counsel's performance was deficient, that is, it fell "below an objective standard of reasonableness;" and (2) he was prejudiced

thereby, defined in this context as a reasonable probability that, "absent his attorney's incompetence, he would rationally have rejected the plea bargain." *United States v. Rodriguez*, 49 F.4th 1205, 1213 (9th Cir. 2022) (cleaned up).

### C. The Allegation of *Strickland* Deficient Performance Was Not Conclusively Refuted

The district court concluded that "there is no basis for finding that counsel's performance was deficient" based on five grounds: (1) the allegation regarding deficient advice is "self-serving"; (2) it was "raised for the first time in defendant's § 2255 petition"; (3) it "is contradicted by the written plea agreement"; (4) it is contradicted "by defendant's own sworn statements at his change of plea hearing"; and (5) it is contradicted "by the declaration of trial counsel." ER-11. Defendant will address these grounds *seriatim*:

#### 1. The "Self-Serving" Nature of the Allegation Is Not a Valid Basis for Summarily Rejecting It

*Every* § 2255 motion and its supporting averments are "self-serving," so that cannot possibly be a valid basis to reject a claim. As one court wrote, "Courts ... must not assume that all petitioners in habeas corpus proceedings are attempting to throw dust in their eyes ... or hoodwink a judge who is not over-wise, and to perjure themselves as a matter of course." *Rose v. Superior Court*, 81 Cal. App. 4th 564, 572 (2000). As *this* Court wrote in finding that the district court had erred in denying a hearing on the basis that the defendant's allegations were self-serving,

26

28 U.S.C. § 2255(b) "imposes no requirement of independent corroboration, and a declaration is not inherently unbelievable merely because it is self-serving." *United States v. Reyes-Bosque*, 624 Fed. App'x 529, 530 (9th Cir. 2015).

### 2. The Allegation's Being Raised for the First Time in a § 2255 Motion Is Not a Valid Basis for Summarily Rejecting It

A proceeding under 28 U.S.C. § 2255 is a *collateral* attack upon a conviction in which a movant is entitled to raise matters not contained in the original record; it is the preferred procedural vehicle for raising an IAC claim precisely so that a full record can therein be developed. *See, e.g.*, *Massaro v. United States*, 538 U.S. 500, 504 (2003) ("[I]n most cases a motion brought under § 2255 is preferable to direct appeal for deciding claims of ineffective assistance."); *United States v. Hanoum*, 33 F.3d 1128, 1131 (9th Cir. 1994) ("This court usually declines to reach ineffectiveness challenges on direct appeal, because the claim cannot be advanced without development of facts outside the record."). Garcia Rodriguez' § 2255 motion was his first opportunity to present his IAC claim to the district court, so how that fact can serve as a basis to deny a claim escapes one.

If the court was simply saying that defendant should have said something about the inadequate immigration advice he received from his counsel either at the change-of-plea or sentencing hearing, that, too, cannot justify the summary denial of his claim. Neither hearing provided him a forum to do so. Regardless, as this

27

Court has held, "[T]he court's performance at the plea colloquy [is] simply irrelevant to the question whether counsel's performance fell below an objective standard of reasonableness." *Rodriguez-Vega*, 797 F.3d at 787.

Moreover, at the sentencing hearing, defendant's counsel, *inter alia*, argued thusly:

> [W]hen you combine [his lengthy time in prison] with the services that will be available to him on supervised release by way of treatment and testing, I think that is a strong weapon that will allow Mr. Garcia Rodriguez to continue his life without substance abuse, and without substance abuse, I think he will not wind up back in the criminal justice system.

ER-100; *see also* ER-101 ("[Garcia Rodriguez] will be on supervised release for another three years [following his release from prison."). These are not statements made by one who understands the virtual certainty of deportation,[3] but more to the

---

[3] Noncitizens are not going to be supervised if they are residing in a foreign country following their deportation. They are not going to be able to take advantage of any rehabilitation services such as drug-testing and treatment, which supervised release would otherwise offer them. *Cf.* 8 U.S.C. § 1228(a)(3)(A) ("Notwithstanding any other provision of law, the Attorney General shall provide for the initiation and, to the extent possible, the completion of removal proceedings, and any administrative appeals thereof, in the case of any alien convicted of an aggravated felony before the alien's release from incarceration for the underlying aggravated felony."); Transcript, U.S. Sentencing Comm'n Public Hearing, at 157 (Feb. 6, 2011) (representative of Department of Justice informing Sentencing Commission, "Typically, alien defendants are deported following completion of their terms of incarceration and consequently they are not supervised by the courts post-incarceration...").

28

point, Garcia Rodriguez, listening to them, would have been reinforced in his asserted belief that his deportation was not certain at all, a belief already reinforced both by the plea colloquy in which the court only informed him that, "if you are not a citizen upon your conviction, you can be removed or deported," ER-115, *and* by the PSR, which did the same, *see* PSR at 11, ¶ 62 ("If [Garcia Rodriguez] has been convicted for a felony offense, he may be amenable to removal proceedings for violations of the Immigration Act.").

Small wonder, then, that Garcia Rodriguez would not have advanced his immigration mis-advice IAC claim until his § 2255 motion, by which time he had learned the harsh truth that he would, in fact, be deported upon completion of his incarceration term. *See* ER-76 (alleging in his sworn § 2255 motion, "I have now learned that when I complete my sentence I will in fact be deported instead of being placed on supervised release as I understood both from my lawyer and [the district court] at my change of plea hearing").

### 3. The Allegation Was Not Contradicted by the Plea Agreement, Even if That Were Relevant to Deficient-Performance Analysis, Which It Is Not

This Court held in *Rodriguez-Vega* that a written plea agreement is irrelevant in assessing a claim of deficient performance by plea-stage counsel. 797 F.3d at 787 ("The government's performance in including provisions in the plea agreement ... [is] simply irrelevant to the question whether counsel's performance

29

fell below an objective standard of reasonableness."). And yet, the district court rejected that holding, as well as *every* direction by this Court in *Rodriguez-Vega*, by which it was, in theory at least, bound. That is the clearest of error. *See, e.g.*, *United States v. Goodheim*, 664 F.2d 754, 756 (9th Cir. 1981) (*per curiam*) ("[U]ntil the Supreme Court takes some action, the law as we have determined it is the law in this circuit .... All parties, the government as well as private persons, are bound by the law as we have found it.").

In the § 2255 context, district courts are not free to mutiny against the law of the circuit as they apparently are in cases addressing claims under 28 U.S.C. § 2254 because the "clearly established Federal law" restriction of 28 U.S.C. § 2254(d), which renders only Supreme Court holdings the lodestars for lower courts, is not part of 28 U.S.C. § 2255. *Compare* § 2254(d)(1) (requiring, to overcome AEDPA review, a state-court decision that unreasonably applied or was contrary to "clearly established Federal law, as determined by the Supreme Court of the United States") with § 2255 (no corresponding provision); *see United States v. Arrington*, 4 F.4th 162, 170 (D.C. Cir. 2021) ("Indeed, the fact that Congress, in passing AEDPA, referred to 'clearly established Federal law' in section 2254(d)(1) but spoke instead in the more general language of 'rights' in section 2255(f)(3) suggests that it meant something by its differing language choices.").

30

Even putting that point aside, however, *the plea agreement did not contradict defendant's IAC allegation.* It said *nothing* about immigration consequences, *see* ER-134 *et seq.*, so how could it possibly do so? It is unsurprising, in light thereof, that the district court's denial order failed to cite a single passage in the plea agreement that purportedly contradicted defendant's IAC allegation. *See* ER-9-12. It is, likewise, unsurprising that the government at no point argued such contradiction. *See* ER-20 *et seq.*; ER-54 *et seq.*

The written plea agreement provided that Garcia Rodriguez reserved the right to claim his attorney provided him ineffective assistance. ER-136-37 at ¶¶ 4-5. It specified a particular special condition of supervised release. ER-138-39 at ¶ 8. It literally said nothing about immigration consequences, so, in sum, the district court's reliance on the document in finding conclusive refutation of defendant's allegations is inexplicable. It is necessarily error.

Indeed, the district court's reliance on the plea agreement is even more clearly error here than in *Rodriguez-Vega.* In that case, the plea agreement contained a section captioned, "Immigration Consequences," which stated, "Defendant recognizes that pleading guilty may have consequences with respect to her immigration status if she is not a citizen of the United States.... Defendant nevertheless affirms that she wants to plead guilty regardless of any immigration consequences that [her] plea may entail, even if the consequence is [her] automatic

31

removal from the United States." 797 F.3d at 785. *Despite* that affirmation, this Court reversed the denial of the defendant's § 2255 motion alleging IAC for failure to properly advise of immigration consequences. *See also United States v. Murillo*, 927 F. 3d 808, 816 (4th Cir. 2019) (reversing denial of § 2255 motion alleging IAC in plea-stage counsel's failure to properly advise re immigration consequences and holding that provision in plea agreement that defendant "want[ed] to plead guilty regardless of any immigration consequences" even if those consequences included "automatic removal from the United States" did not conclusively refute prejudice allegation since "[g]iving dispositive weight to boilerplate language from a plea agreement is at odds with *Strickland's* fact-dependent prejudice analysis"). *A fortiori*, this Court should do the same; here, again, the plea agreement said *absolutely nothing* about immigration consequences.

### 4. The Allegation Was Not Contradicted by the Defendant's Statements at the Change-of-Plea Hearing

The predicate allegation of Claim No. Two is that plea-stage counsel at no point advised defendant prior to his pleading guilty that his so pleading to an aggravated felony would render his deportation a virtual certainty. *That* was what was required of counsel, as this Court held in no uncertain terms. *See Rodriguez-Vega*, 797 F.3d at 786 (holding that, in order to provide effective assistance where

32

deportation was mandatory, counsel must inform his client that deportation was "virtually certain, or words to that effect").[4]

Just as with the plea agreement discussed in the preceding subsection, there was no contradiction between the allegation that counsel failed to advise his client of the virtual certainty of his deportation and anything said at the plea colloquy. The district court's denial repeated the government's claim that "[t]he court specifically asked defendant, 'you do understand that if you are not a citizen upon your conviction, you can be removed or deported from the United States,' to which defendant answered that he did understand," ER-10, so, presumably, that was the contradiction to which the court was referring (since no other was specified).

The notion that said exchange is a functional substitute for counsel's advising defendant of the virtual certainty of his deportation is untenable. The proposition that he "can be removed or deported" is, quite obviously, not the same

---

[4] The government in the proceedings below attempted to distinguish the controlling *Rodriquez-Vega* based on the distinction between the legal mis-advice given in that case and the advice claimed to have been given by plea-stage counsel herein, *see* ER-21-22, as if that mattered. If the government attempts to do so again in this appeal, defendant will address the argument in more detail in his reply brief. Suffice it to say at this juncture that what *mattered* in *Rodriquez-Vega* were two facts, *viz.*: (1) it was clear that the offense to which the defendant pled guilty rendered deportation virtually certain; and (2) plea-stage counsel did not advise his client of that virtual certainty. 797 F.3d at 786-87. Both those facts are also present herein (as discussed in the following subsection, counsel did not deny them).

33

thing as "deportation is a virtual certainty." It is why numerous courts, including this one, have rejected that false equivalence. *See, e.g., United States v. Bonilla*, 637 F.3d 980, 984 (9th Cir. 2011) ("A criminal defendant who faces almost certain deportation is entitled to know more than that it is *possible* that a guilty plea could lead to removal; he is entitled to know that it is a virtual certainty.") (emphasis in original); *Doe v. United States*, 915 F.3d 905, 913 (2d Cir. 2019) (reversing denial of coram nobis petition and noting, "The magistrate judge did ask Doe, as part of a standard plea colloquy, if he understood that he 'may be deported as a result of this conviction.' Yet nowhere during the colloquy did the court inform Doe that the crime to which he was pleading guilty constituted an aggravated felony, or what the mandatory consequences of pleading to an aggravated felony would be."); *United States v. Urias-Marrufo*, 744 F.3d 361, 369 (5th Cir. 2014) (vacating denial of motion to withdraw guilty plea and writing that "it is irrelevant that the magistrate judge asked Urias whether she understood that there might be immigration consequences ..."); *Ortega-Araiza v. State*, 331 P.3d 1189, 1198 (Wyo. 2014) ("We find that the district court's generic advisement ['If you are not a U.S. citizen, certain felony convictions may be the basis for deportation proceedings by the ICE'] could not compensate for defense counsel's failure to adequately advise his client.... [I]t would be difficult for a court to provide the advice necessary to cure ineffective assistance of counsel in cases where *Padilla* is

34

implicated."); *United States v. Akinsade*, 686 F.3d 248, 254 (4th Cir. 2012) (holding district court's admonition insufficient to correct defense counsel's mis-advice regarding immigration consequences of guilty plea since admonition was not "a careful explanation of the consequences of deportation," but, instead, merely "warned that [the defendant]'s plea *could* lead to deportation") (emphasis is original).

As the Supreme Court has noted regarding plea colloquies more generally, although the objective of Fed. R. Crim. P. 11 is to flush out issues of guilty-plea voluntariness, "like any procedural mechanism, its exercise is neither always perfect nor uniformly invulnerable to subsequent challenge calling for an opportunity to prove the allegations." *Fontaine v. United States*, 411 U.S. 213, 215 (1973). As the Hight Court also wrote, "[F]ederal courts cannot fairly adopt a per se rule excluding all possibility that a defendant's expectations at the time his guilty plea was accepted were so much the product of such factors as misunderstanding, duress, or misrepresentation by others as to make the guilty plea a constitutionally inadequate basis for imprisonment." *Blackledge v. Allison*, 431 U.S. 63, 75 (1977).

This Court expressly rejected the district court's found "contradiction" not only in *United States v. Bonilla, supra,* but also in *Rodriguez-Vega*:

> We also reject the government's arguments that counsel's performance was not ineffective because Rodriguez–Vega

received notice that she might be removed from a provision in the plea agreement and the court's plea colloquy under Federal Rule of Criminal Procedure 11. The government's performance in including provisions in the plea agreement, and the court's performance at the plea colloquy, are simply irrelevant to the question whether counsel's performance fell below an objective standard of reasonableness.

797 F.3d at 787. This Court found that, because "the immigration statute expressly identifies Rodriguez–Vega's conviction as a ground for removal," her removal was "practically inevitable," triggering counsel's "require[ment] to advise her that her conviction rendered her removal virtually certain, or words to that effect." *Id.* at 786. Although the district court herein was bound by that simple, unequivocal holding, it chose defiance rather than compliance with its duty as a lower court to follow it.

In *Rodriguez-Vega*, the district court had ruled that plea-stage counsel's only responsibility was to advise his client that her plea created a general risk of removal, which was satisfied by his telling her of the "potential" for removal. 797 F.3d at 786. Reversing, and citing *Padilla,* this Court held that, "where the law is 'succinct, clear, and explicit' that the conviction renders removal virtually certain, counsel must advise his client that removal is a virtual certainty." *Id.*; *see also State v. Paredez*, 101 P.3d 799, 805 (N. Mex. 2004) ("If a client is a non-citizen, the attorney must advise that client of the specific immigration consequences of pleading guilty, including whether deportation would be virtually certain.");

36

*Diaz v. State*, 896 N.W.2d 723, 730 (Iowa 2017) ("If the crime faced by a defendant is clearly covered under the immigration statute, counsel must advise the defendant that the immigration consequences will almost certainly follow.").

Thus, where, as here, the consequence of deportation is virtually certain, advisement of possible deportation is insufficient advice. Garcia Rodriguez' deportation was virtually certain because he pled guilty to an aggravated felony, which is expressly identified as a deportable offense under the immigration statute. *See Rodriguez-Vega*, 797 F.3d at 786. It was only through ignoring or rejecting the great weight of authority, including binding authority of this Court, which allowed the district court to find Garcia Rodriguez' allegations conclusively contradicted by the plea colloquy.

To be absolutely clear, there is *no* question but that his deportation *was* mandatory following his guilty plea under "succinct, clear, and explicit" law. He pled guilty to an aggravated felony. *See* 8 U.S.C. § 1101(a)(43)(B) (defining "aggravated felony" to include "illicit trafficking in a controlled substance (as defined in section 802 of Title 21)"; *United States v. Verduzco–Rangel*, 884 F.3d 918, 922 (9th Cir. 2018) (noting trafficking methamphetamine is aggravated felony); *United States v. Ramiro*, 548 Fed. Appx. 458, 459 (9th Cir. 2013) ("Allegedly acting on his lawyer's advice, Ramiro pleaded guilty to

37

distribution of methamphetamine, which is an aggravated felony."); Brief for the United States in *United States v. Mendoza-Plascencia*, No. 03-30308 (9th Cir.), 2003 WL 22994963, at *3 (government's asserting in answering brief that the defendant "was an alien who had been previously deported from the United States following his commission of an aggravated felony, a methamphetamine distribution charge"); 8 U.S.C. § 1227(a)(2)(A)(iii) ("Any alien who is convicted of an aggravated felony at any time after admission is deportable."); *Lee v. United States*, 582 U.S. 357, 361-62 (2017) ("Lee had pleaded guilty to what qualifies as an 'aggravated felony' under the Immigration and Nationality Act [*i.e.*, possessing ecstasy with intent to distribute in violation of 21 U.S.C. § 841(a)(1)], and a noncitizen convicted of such an offense is subject to mandatory deportation."); *see also Chaidez v. United States*, 568 U.S. 342, 345 (2013) (same).

In sum, the district court relied on a grand total of *two* portions of the extant record that, in its view, contradicted Garcia Rodriguez' allegations underlying Claim No. Two – his statement at the plea colloquy that he understood he could be deported, and his plea agreement – and neither did. Moreover, those things are *exactly* what this Court held is irrelevant to such a claim, so the district court's reliance thereon is inexplicable, especially since defendant specifically brought *Rodriguez-Vega* to its attention as "dispositive" authority, *see* ECF-127 at 7.

38

**5.    The Allegation Was Not Contradicted by Plea-Stage Counsel's Declarations, Which Could Not Warrant Summary Rejection Even if It Was**

Defendant's plea-stage lawyer provided two declarations to the government, which are notable as much for what they do not say as what they do.  There is a clear factual dispute as to one of the lawyer's averments – he claims he counseled his client that "a conviction in his case would absolutely render him deportable." ER-19 at ¶ 4.  Defendant claims, "It is not true that my lawyer told me that my conviction 'would absolutely render me deportable.' "  ER-13 at ¶ 1.  The court was not authorized to resolve that factual dispute absent an evidentiary hearing. *See* section II, *infra.*

Regardless, even if that *was* what counsel advised, it *still* fell below what was constitutionally required in this context because, as noted, what counsel had to do in order to have provided effective assistance was inform his client that deportation was "virtually certain, or words to that effect." *Rodriguez-Vega*, 797 F.3d at 786.  Counsel *nowhere* averred that he had done so.  *See* ER-18-19, 50-53. The district court merely adopted the government's argument that the claimed advice given was good enough.  *See* ER-10-11.  That could only be the case, however, if "absolutely render him deportable" were deemed the equivalent of "virtually certain to be deported."  It is the same error discussed, *supra,* of ruling that the court's plea-colloquy admonition that defendant *could* be deported

effectively substitutes for advice of counsel that he *would* be deported. The addition of the "absolutely" adverb merely modifies the phrase, "render him deportable," that is, counsel told defendant he, undoubtedly, could be deported. *Cf.* https://www. merriam-webster.com/dictionary/deportable (defining "deportable" as "subject to" or "punishable by" deportation). Assigning plain meaning to plain words, however, that is obviously not the same thing as advising that he undoubtedly *would* be deported.

Nowhere does counsel simply aver that he advised defendant that deportation was a virtual certainty, or words to that effect, should defendant accept the government's plea offer. And counsel did not do so *despite* his claim that he was well aware of *Padilla* and *Rodriguez-Vega*, ER-19 at ¶ 3. That telling, if not dispositive, omission, was simply glossed over by the district court. This Court, unlike the lower court, should note how artfully counsel phrased this paragraph in his declaration – "I believed Mr. Garcia Rodriguez would be deported as a result of his conviction in this case. I never told him otherwise. I never told him that I thought he would not be deported." ER-52 at ¶ 14. Despite counsel's stated belief, and despite what he never told his client, he did *not* simply aver that he had advised his client that he would be deported, which, again, is the dispositive point.

The error in finding no deficient performance on the extant record is quite obvious because it *is* deficient performance for plea-stage counsel to fail to inform

40

his client that, under the plea agreement, he "would be pleading to an aggravated felony that would render him categorically deportable." *United States v. Swaby*, 855 F.3d 233, 240 (4th Cir. 2017).

### D. The Allegation of *Strickland* Prejudice Was Not Conclusively Refuted

In the context of guilty pleas, the prejudice prong of IAC analysis is met if a defendant shows that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

For noncitizen defendants to establish prejudice, they need not show that they had a realistic possibility of gaining an acquittal at trial upon rejecting a plea offer. *Lee v. United States*, 582 U.S. 357, 367 (2017). With respect to them, "common sense (not to mention [Supreme Court] precedent) recognizes that there is more to consider than simply the likelihood of success at trial." *Id.* When the consequences of conviction by trial and by plea are, "from the defendant's perspective, similarly dire, even the smallest chance of success at trial may look attractive." *Id.* Numerous courts have recognized as much. *See, e.g., State v. Nunez-Diaz*, 444 P.3d 250, 254 (Ariz. 2019) ("It is not irrational for a defendant to go to trial when trial represents the only, albeit slim, chance that a defendant can avoid severe and certain immigration consequences.").

41

There is nothing facially implausible or unbelievable about defendant's averment that, had he been aware that his deportation would be automatic upon his conviction, he would not have pled guilty. ER-76. The Supreme Court has acknowledged, perhaps stating the obvious, "Preserving the client's right to remain in the United States may be more important to the client than any potential jail sentence." *INS v. St. Cyr*, 533 U.S. 289, 322 (2001) (citation omitted); *see also Padilla*, 559 U.S. at 364 ("[D]eportation is an integral part – indeed, sometimes the most important part – of the penalty that may be imposed on noncitizen defendants who plead guilty to specified crimes.") (footnote omitted).

At the time of the change-of-plea hearing, Garcia Rodriguez was in his early forties and a legal permanent resident of the United States. PSR at 3. His parents lived in California. *Id.* at 10, ¶ 51. He had five living siblings, *all* of whom resided in California. *Id.* at ¶ 52. He provided for his three children, who resided in Mexico and with whom he maintained close relations, through his work in the United States, and he desired to continue to do so. *Id.* at 11, ¶¶ 58, 61. He had a long history in this country of gainful employment. *Id.* at 13, ¶ 75. He had been living in the United States for some quarter of a century, since he was eighteen years old. ER-42. Indeed, it was his desire to work to earn money to support his children that led him to emigrate to the Unites States in the first place. ER-98-99. Six members of his family, presumably all of whom lived in the United States,

42

attended his sentencing hearing. ER-98. In his short allocution at that hearing, Garcia Rodriguez chose to emphasize his family ties. ER-103 ("I ask you for a fair sentence so that I can soon be back with my family because this time that I have spent in prison has been as painful for me as it has been for my relatives.").[5] The district court took due note of his "commitment to his family." ER-106. It took at least thirteen discussions with his lawyer before he agreed to plead guilty, ER-51 at ¶ 9, with immigration consequences part and parcel of those discussions, ER-52-53 at ¶¶ 14-17; ER-19 at ¶¶4-5.

These facts all bespeak the credibility of Garcia Rodriguez' averment of the importance to him of remaining in this country and not willingly rendering himself subject to virtually certain deportation, or, more to the point, they render it impossible to dispatch his sworn claim that he would have rejected the plea agreement had he known it meant his automatic deportation as facially incredible because irrational. *See Doe v. United States*, 915 F.3d 905, 912 (2d Cir. 2019) (noting defendant's "history in the United States, his family circumstances, and his gainful employment all signal [his] strong connection to, and desire to remain in, the United States"); *State v. Sandoval*, 249 P.3d 1015, 1022 (Wash. 2011) (holding

---

[5] One must ask – would an individual who has been informed by his lawyer that his deportation was virtually certain ask for a shorter sentence so he could return to his family sooner?

defendant prejudiced by his lawyer's immigration advice because it would have been "rational to take his chances at trial" and risk a longer term given he "had earned permanent residency and made this country his home").

In this context, this Court should note that Garcia Rodriguez, following his guilty plea to the aggravated felony, could not seek cancellation of his removal, 8 U.S.C. §§ 1229b(a)(3) & (b)(1)(C) (such cancellation unavailable to lawful permanent resident convicted of aggravated felony); he could not seek asylum, *see Flores-Vega v. Barr*, 932 F.3d 878, 884 (9th Cir. 2019) (recognizing that a "noncitizen convicted of a 'particularly serious crime' is barred from a grant of asylum," and "[f]or purposes of asylum, an aggravated felony is per se a particularly serious crime") (citations omitted); and he could not seek voluntary departure so as to preserve the possibility of readmission to the country, 8 U.S.C. § 1229c(a)(l) & (b)(1)(C) (voluntary departure unavailable to one convicted of aggravated felony).  Thus, for him, deportation was truly "the equivalent of banishment or exile." *Delgadillo v. Carmichael*, 332 U.S. 388, 390-391 (1947); *see also* 8 U.S.C. § 1182(a)(2)(C)(ii) (person convicted of controlled-substance trafficking permanently prevented from ever returning to this country).[6]  It is

---

[6] Parenthetically, even if there *were* some procedural mechanism available to Garcia-Rodriguez to avoid deportation, that would not impact the question of whether he received IAC on account of his lawyer's not advising him of its virtual

because that was so that his averment that he would have taken his chances at trial had he any inkling that it meant his certain banishment cannot be summarily rejected as irrational or incredible. *See United States v. Swaby*, 855 F.3d 233, 243-44 (4th Cir. 2017) ("[T]he prejudice prong does not require a defendant to show that going to trial would have been the best objective strategy or even an attractive option. It merely requires the defendant to show a reasonable likelihood that a person in the defendant's shoes would have chosen to go to trial. The decision does not need to be optimal and does not need to ensure acquittal; it only needs to be rational.").

## II. THE DISTRICT COURT ERRED IN DENYING DEFENDANT AN EVIDENTIARY HEARING BEFORE DENYING HIS § 2255 MOTION

As this Court did in *Rodriguez-Vega, see* 797 F.3d at 784, it could simply vacate Garcia Rodriguez' conviction based on the current record. In *Rodriguez-Vega*, the defendant averred that her plea-stage counsel never "told her that her plea would cause her to be removed." *Id.* at 785. The government submitted a declaration from that counsel averring that he had advised his client that "there was a potential to be deported based on her immigration status." *Id.* at 785-86. On that record, this Court vacated her conviction.

---

certainty, as this Court expressly held in *Rodriguez-Vega,* 797 F.3d at 786-87 & n.6.

Here, Garcia Rodriguez made a materially identical claim, ER-76, and his lawyer responded that he had advised his client that his conviction "would absolutely render [him] deportable," ER-13 at ¶ 1, which is materially identical to the advice given to Ms. Rodriguez-Vega.  Thus, the vacating of Garcia Rodriguez' conviction should follow.  Should this Court disagree, he now turns to his contention that the district court erred in denying his Claim No. Two without conducting an evidentiary hearing:

### A.    Standard of Review

A district court's denial of an evidentiary hearing in a § 2255 proceeding is reviewed for an abuse of discretion.  *United States v. Rodriguez*, 49 F.4th 1205, 1211 (9th Cir. 2022).  It *is* an abuse of discretion to deny such hearing where "the record does not affirmatively manifest the factual or legal invalidity of the petitioner's claims."  *Baumann v. United States*, 692 F.2d 565, 571 (9th Cir. 1982).

### B.    Legal Background

The standard for earning an evidentiary hearing in § 2255 proceedings sets quite a low threshold.  "A claim must be so palpably incredible or patently frivolous as to warrant summary dismissal in order to justify the refusal of an evidentiary hearing."  *United States v. Howard*, 381 F.3d 873, 877 (9th Cir. 2004) (citations and internal quotation marks omitted).  Summary dismissal is warranted only when "the motion and the files and records of the case *conclusively* show that

46

the prisoner is entitled to no relief." 28 U.S.C. § 2255(b) (emphasis added); *see also* Rule 4(b) Governing § 2255 Proceedings in the U.S. District Courts (authorizing court to summarily deny a § 2255 motion only if "it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief").

"The standard [for warranting an evidentiary hearing in § 2255 proceedings] essentially is whether the movant has made specific factual allegations that, if true, state a claim on which relief could be granted." *United States v. Withers*, 638 F.3d 1055, 1062 (9th Cir. 2011). The threshold for such a hearing, then, is "low." *United States v. Howard*, 381 F.3d at 883; *see also United States v. Rodrigues*, 347 F.3d 818, 824 (9th Cir. 2003) ("fairly lenient"); *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999) ("relatively light").

Although generally required to accept a § 2255 movant's well-pled factual allegations as true, as noted, a district court may rely on the case records and not grant an evidentiary hearing if said records conclusively disprove the allegations. That is not the same thing, however, as relying on records submitted by the government in opposition to a § 2255 motion. Appositely herein, a district court may not deny an evidentiary hearing by accepting as true affidavits submitted by the government. If the government's affidavits conflict with the allegations of a

47

§ 2255 motion and its supporting affidavits regarding material issues of fact, and those conflicts cannot be resolved by the motion itself or the record, the resolution of those issues requires an evidentiary hearing. *Machibroda v. United States*, 368 U.S. 487, 494-95 (1962); *see also Crispo v. United States*, 443 F.2d 13, 14 (9th Cir. 1971) (*per curiam*) (affirming that affidavits submitted by the government are not the "files and records" contemplated by § 2255 that may serve to "conclusively show that the prisoner is entitled to no relief" and holding that district court had no discretion "to resolve controlling factual disputes solely from conflicting ex parte affidavits").

In sum, then, allegations in a § 2255 motion must be "palpably incredible" or "patently frivolous or false," or the raised issues can be conclusively decided based on the record evidence, in order to justify the denial of an evidentiary hearing. *Blackledge v. Allison*, 431 U.S. 63, 76 (1977) (§ 2254 case).[7] "Evidentiary hearings are particularly appropriate when claims raise facts which occurred out of the courtroom and off the record." *United States. v. Chacon-Palomares*, 208 F.3d 1157, 1159 (9th Cir. 2000) (citation and internal quotation marks omitted).

---

[7] "The standards for § 2255 hearings are essentially the same as for evidentiary hearings under a habeas petition, except that the previous federal fact-finding proceeding is in issue rather than the state's." Rules Governing § 2255 Proceedings in the U.S. District Courts, Rule 8 Advisory Committee Notes (1976).

### C.     The District Court Abused Its Discretion in Denying an Evidentiary Hearing on Claim No. Two of the § 2255 Motion

The face of the order denying Claim No. Two evinces a heavy reliance on the declarations of defendant's plea-stage counsel submitted by the government in opposition to the § 2255 motion.  ER-9-10.  The district court explained it was denying an evidentiary hearing on the claim "because defendant's allegations are conclusory and not only unsupported, but directly contradicted, by the evidentiary record, including the court's own recollection of defendant's statements at his change of plea hearing."  ER-11-12.

No one of those stated reasons suffices for denying an evidentiary hearing, nor does their combination.  Defendant has already addressed in Section I, *supra,* the district court's erroneous characterizations of his predicate allegation as "unsupported" and "contradicted" by the evidentiary record.  The only additional justifications that the court added for denying an evidentiary hearing are its characterization of the allegation as "conclusory" and its "own recollection of defendant's statements at his change of plea hearing."  ER-11-12.  Defendant will now address those additional rationalizations.

### 1.     The Immigration-Advice IAC Claim Is Not "Conclusory"

Garcia Rodriguez' allegations underlying Claim No. Two are actually quite specific – "I asked my lawyer if I would be deported as a result of my guilty plea and he said he didn't think so, adding that I qualified for a drug program and other

49

early-release benefits....  Had I then known I would automatically be deported for pleading guilty I would not have plead guilty but would have gone to trial for a chance to avoid this now automatic deportation."  ER-76.

Moreover, Garcia Rodriguez fleshed out those allegations with greater specificity in his supplemental declaration, ER-13-14.  There, *inter alia*, he averred that, contrary to his lawyer's assertion, the lawyer did *not* tell him that his conviction "would absolutely render [him] deportable."  ER-13 at ¶ 1.  He averred that, instead, his lawyer told him that he didn't think defendant "would be deported because others he had represented had not been deported either."  ER-13 at ¶ 2.  He further noted that his lawyer at no time mentioned the words "aggravated felony" to him, which, when combined with the lawyer's asking for early-release benefits at his sentencing hearing, benefits to which deportable aliens are not entitled, evinced the lawyer's lack of knowledge of the virtual certainty of defendant's deportation.  ER-13-14 at ¶¶ 3 & 7.

None of that is "conclusory."  The term is defined in the dictionary as "consisting of or relating to a conclusion or assertion for which no supporting evidence is offered."  *See* https://www.merriam-webster.com/dictionary/conclusory; *see also* https://thelawdictionary.org/conclusory (defining term as "[a]n inference that has no proof but is stated none the less"); Black's Law Dictionary 329 (9th ed. 2009) (defining term as "expressing a factual inference

50

without stating the underlying facts on which the inference is based" and providing the usage example of, "because the plaintiff's allegations lacked any specific evidence they were merely conclusory").

The allegations underlying Claim No. Two were not assertions of inferences, the underlying facts were stated with particularity, and they were supported by both direct *evidence,* that is, the sworn assertions of defendant, *see, e.g., Kafo v. United States*, 467 F.3d 1063, 1068 (7th Cir. 2006) ("Requiring either that the [§ 2255] motion be signed under penalty of perjury or be accompanied by an affidavit is thus not a mere technicality of pleading; once a pleading is submitted in this form, the allegations contained therein *become* evidence...") (emphasis in original); as well as circumstantial *evidence*, that is, plea-stage counsel's not denying, even though he gave the government *two* declarations: (1) that he never used the term "aggravated felony" in his at-least thirteen pre-plea discussions with his client; (2) that he never told his client that his deportation was a virtual certainty as a consequence of his guilty plea; (3) that he had asked for early-release benefits for which deportable aliens were not eligible; *etc*.

In *Brownlee v. Conine*, 957 F.2d 353 (7th Cir. 1992), the court referred to the term "conclusory" as an ill-defined, "overused lawyers' cliché." *Id.* at 354. The district court used the term as partial justification for denying an evidentiary hearing, but, whatever its precise meaning, it clearly has no application herein. If,

51

indeed, defendant's allegations were merely conclusory, the district court would have been obligated to summarily deny the claim at the outset. *See, e.g., Shah v. United States*, 878 F.2d 1156, 1161 (9th Cir. 1989) (recognizing that conclusory claims without supporting factual allegations warrant summary dismissal of § 2255 motion); *Baumann v. United States*, 692 F.2d 565, 571 (9th Cir. 1982) (recognizing § 2255 motion may be denied without ordering response from government if "it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief") (citation omitted). The district court did not enter such denial; instead, it issued an order to show cause in which it found that "defendant has presented a cognizable claim for relief," ER-71, thereby indicating it found the allegations sufficiently *non-conclusory* to warrant further proceedings. The court's subsequently characterizing the underlying allegations as conclusory appears, in light of all the foregoing, to be a makeweight rationalization.

As noted, *supra,* Garcia Rodriguez' allegations cannot simply be discounted or dismissed if, as here, they are not palpably incredible, "patently frivolous or false," or conclusively refuted by other evidence. Here, his allegations are none of those things. In light thereof, *even if* the district court may have found it difficult to believe that an experienced defense counsel would have mis-advised a client about the immigration consequences of his guilty plea, that is no justification for

denying the evidentiary hearing that was necessary to permit the court to make appropriate credibility determinations. *See, e.g.*, *Machibroda v. United States*, 368 U.S. 487, 496 (1962) (remanding for evidentiary hearing because § 2255 movant would have been entitled to relief if the allegations in his motion were true, though the allegations may be "improbable and unbelievable"); *Roberts v. United States*, 486 F.2d 980, 982 (5th Cir. 1973) (vacating denial of § 2255 motion and remanding for evidentiary hearing, concluding that "a Section 2255 petitioner has a right to present evidence in support of his allegations when there exists issues of fact, even though his position be 'improbable and unbelievable' ").

### 2. The Court's Own Unspecified Recollection Adds Nothing

In addition to mischaracterizing defendant's allegations as "unsupported" and "conclusory," and mistakenly viewing the evidentiary record as directly contradicting them, the district court's final justification for denying an evidentiary hearing was "its own recollection of defendant's statements at his change of plea hearing." ER-11-12. The court did not specify the content of its recollection, but it is impossible to imagine that those recollections are of defendant's statements not reflected in the reporter's transcript at that hearing. As discussed in section I.C.4, *supra,* those statements did not conclusively refute the allegations. For the same reasons, neither does the district court's unspecified recollection. That recollection, obviously, could not include a memory of what was said between

counsel and defendant, discussions to which the court was not privy. *See Machibroda v. United States*, 368 U.S. 487, 495 (1962) (holding allegations that guilty plea was induced by promises of prosecutor were not "of a kind that the District Judge could completely resolve by drawing upon his own personal knowledge or recollection"); *Armienti v. United States*, 234 F.3d 820, 825 (2d Cir. 2000) ("[A]ctions taken by counsel outside the presence of the trial judge ... [can] not ordinarily be resolved by him without ... a hearing.").

Thus, in sum, just as the justifications advanced in the district court's order denying Claim No. Two should be found by this Court to have been inadequate to do so, so, too, should this Court find inadequate the justifications advanced to deny an evidentiary hearing.

**D.**    **Were He Afforded an Evidentiary Hearing, It Is Highly Likely Defendant Will Prove the Predicate Allegations of Claim No. Two**

At an evidentiary hearing, Garcia Rodriguez would bear the burden of proving his allegations by a preponderance of the evidence. *See, e.g., United States v. Kastenbaum*, 613 F.2d 86, 89 (5th Cir. 1980) ("The defendant has the burden of sustaining his contentions on a § 2255 motion by a preponderance of the evidence.") (citation omitted); 3 Charles Alan Wright & Arthur Miller, *Fed. Prac. & Proc. Crim.* § 635 (5th ed. 2025 update) ("The defendant has the burden of supporting the allegations in a § 2255 action by a preponderance of the evidence.").

54

It is at such hearing that the district court could appropriately assess the credibility of Garcia Rodriguez' allegations that his plea-stage counsel at no point advised him that, by pleading guilty, his deportation would be virtually certain; and that, had he been aware such was the case, he would not have pled guilty. Should the court credit his testimony to that effect, it would be required to grant him § 2255 relief on Claim No. Two. It is difficult to believe a court would *not* find that testimony credible when plea-stage counsel himself, despite providing two declarations to the government, at no point denied that he had not advised his client that deportation was a virtually certain consequence of his guilty plea. Again, advice that he "absolutely" would be "deportable" as a consequence is not to the same effect. Moreover, given defendant's circumstances, described in subsection I.D, *supra,* it is equally likely that the court would credit his testimony that, had he known of that virtual certainty, he would have rejected the plea offer in hopes of avoiding that outcome.

Crediting defendant's testimony, however, is not the lone proof of prejudice he could present at an evidentiary hearing. As this Court observed, to meet that prong of IAC analysis, a § 2255 movant may also "demonstrate that there existed a reasonable probability of negotiating a better plea by identifying cases indicating a willingness by the government to permit defendants charged with the same or a

substantially similar crime to plead guilty to a non-removable offense."

*Rodriguez-Vega*, 797 F.3d at 788.

The government is not uniformly averse to doing so. The U.S. Attorney's Office in the Southern District of California, in far closer proximity to the Mexican border than the Northern District and, thus, almost certainly charging noncitizen defendants far more often than its Northern District counterpart, often agrees to accept guilty pleas from those noncitizens charged with substantially similar crimes as those charged against Garcia Rodriguez in order to avoid the virtual certainty of deportation; and that is far more likely to be the case when the defendant is a lawful permanent resident as he was. Thus, *see, e.g.,*:

1.    Information, *United States v. Quevedo-Gomez*, No. 21-CR-1671-GPC (Jun. 3, 2021), ECF-13 (charging defendant with one count of possession of heroin with intent to distribute in violation of 21 U.S.C. § 841(a)(1), an aggravated felony); Govt.'s Sentencing Summary Chart (Feb. 1, 2022), ECF-46 (defendant charged with importing 2.98 kg. of heroin); Defendant's Sentencing Memorandum (May 19, 2022), ECF-56 at 1 (defendant a lawful permanent resident); Judgment (May 31, 2022), ECF-69 (conviction for one count of importing merchandise contrary to law in violation of 18 U.S.C. § 545, not an aggravated felony).

2.    Information, *United States v. Carranco Perez*, No. 22-CR-824-JLS (Apr. 12, 2022), ECF-16 (charging defendant with three counts of importing

56

cocaine, heroin, and another controlled substance in violation of 21 U.S.C. §§ 952 & 960, an aggravated felony); Govt.'s Sentencing Summary Chart (Oct. 20, 2022), ECF-34 (defendant charged with importing 5 kg. of cocaine, 2 kg. of heroin, and 2 kg. of fentanyl); Defendant's Sentencing Memorandum (Oct. 16, 2022), ECF-33 at 1 (defendant a lawful permanent resident); Judgment (Oct. 27, 2022), ECF-69 (conviction for one count of importing merchandise contrary to law in violation of 18 U.S.C. § 545, not an aggravated felony).

3.      Complaint, *United States v. Torres Chitala*, No. 20-CR-0267 5-BAS (Aug. 6, 2020), ECF-1 (charging defendant with one count of importing 1.31 pounds of methamphetamine in violation of 21 U.S.C. §§ 952 & 960, an aggravated felony); *id.* at 2 (defendant a lawful permanent resident); Judgment (Dec. 10, 2020), ECF-37 (conviction for one count of making a false statement to a federal officer in violation of 18 U.S.C. § 1001, not an aggravated felony).

Defendant offers these few examples to show that, were he afforded an evidentiary hearing and discovery in anticipation thereof, it is quite possible, if not probable, that he will be able to present instances in the Northern District of California in which the government did exactly as it did in the Southern District, that is, evinced its willingness to permit noncitizen defendants who are lawful permanent residents and were charged with the same or substantially similar

57

crimes as those charged against defendant to plead guilty to a non-removable offense.

One way or the other, then – through finding Garcia Rodriguez' testimony credible or through adduced proof of the government's willingness, in order to avoid mandatory deportation, to be reasonable with lawful permanent residents, especially those like Garcia Rodriguez with no prior convictions, *see* PSR at 9, ¶ 45, and decades of residency in this country – it is highly likely that an evidentiary hearing would not be merely a *pro forma* stop on the road to the district court's again denying his § 2255 motion.

## CONCLUSION

It is really quite remarkable what occurred in this case – despite the government's obviously being aware of *Rodriguez-Vega* – it repeatedly cited the case in its opposition to defendant's § 2255 motion, *see* ER-67, 68 – it, nonetheless, advanced arguments irreconcilable with it, *see, e.g.,* ER-66-67 (arguing no deficient performance because of plea colloquy); ER-68 (arguing no prejudice because court at colloquy "expressly discussed defendant's immigration consequences"). And the district court just went along.

It is, however, the prerogative of only an *en banc* panel of this Court or of the Supreme Court to overturn that binding precedent. *See Hart v. Massanari*, 266 F.3d 1155, 1171 (9th Cir. 2001) (so stating); *see also id.* at 1175 ("A district court

bound by circuit authority ... has no choice but to follow it, even if convinced that such authority was wrongly decided.").  Thus, it is *not* the prerogative of the government and the district court to refuse to follow the law of this Circuit.  It is why the lower court's decision should not be permitted to stand.

For all the foregoing reasons, this Court should reverse the denial of Garcia Rodriguez' § 2255 motion and either vacate his conviction or remand the matter with instructions to the district court to conduct an evidentiary hearing on Claim No. Two.

Dated: June 13, 2025                                    Respectfully submitted,

/s/ Gary K. Dubcoff
Gary K. Dubcoff

Counsel for Defendant-Appellant
JOSE DE JESUS GARCIA RODRIGUEZ

## <u>CERTIFICATE OF COMPLIANCE FOR BRIEFS</u>

9th Cir. Case Number: 24-1939

I am the attorney for defendant-appellant Jose de Jesus Garcia Rodriguez.

This brief contains 11,835 words, excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief complies with the word limit of Cir. R. 32-1.

Dated: June 13, 2025

/s/ Gary K. Dubcoff
Gary K. Dubcoff

# CERTIFICATE OF SERVICE

I, Gary K. Dubcoff, hereby certify that I electronically submitted the

foregoing Appellant's Opening Brief to the Clerk of the Court for the United States

Court of Appeals for the Ninth Circuit by using the ACMS system on June 13,

2025.

I further certify that all participants in the case are registered ACMS users

and that service will be accomplished by the ACMS system.

Dated: June 13, 2025

/s/ Gary K. Dubcoff